IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAVID L. H.,[1]
    Plaintiff,

      v.                            Civil No. 3:21-cv-00189 (MRC)

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

**MEMORANDUM OPINION**

This is an action seeking review of the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Plaintiff's application for a period of disability and disability insurance benefits under the Social Security Act (the "Act"). At the time of his application, Plaintiff was forty-one years old and last worked in fine dining. (R. at 141, 160.) Plaintiff contends that he is unable to work due to an aneurism involving the optic nerve and brain stem, double hernia, stroke, and degeneration in two disks within his spine. (R. at 159-60.)

On December 28, 2020, an Administrative Law Judge ("ALJ") denied Plaintiff's application for a period of disability and disability insurance benefits. (R. at 18-31.) Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred: (1) in evaluating the conflicts in the testimony of the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT"); and (2) in not considering Plaintiff's diplopia as a medically determinable impairment. (Pl.'s Brief Supp. Mot. Summ. J. 10-15, ECF No. 24 ("Pl.'s

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

Mem.").) This matter now comes before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1), on cross motions for summary judgment, which render the matter ripe for review.[2] For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 23), GRANTS Defendant's Motion for Summary Judgment ("Def.'s Mem.") (ECF No. 25), and AFFIRMS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on September 3, 2019, alleging disability beginning May 18, 2019. (R. at 141.) The SSA denied Plaintiff's claim on November 14, 2019 (R. at 83-91) and again upon reconsideration on March 9, 2020. (R. at 94-103.) At Plaintiff's written request, the ALJ held a hearing on September 21, 2020. (R. at 36-62, 119.) On December 28, 2020, the ALJ issued a written opinion and denied Plaintiff's claim. (R. at 18-31.) On January 27, 2021, the SSA Appeals Council denied Plaintiff's request for review and rendered the ALJ's decision as the final decision of the Commissioner. (R. at 1-5.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c).[3]

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir.

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Memorandum Opinion, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for supplemental security income.

2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant

through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472. If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. § 404.1520(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 20-33.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 18, 2019 (his alleged onset date).[4] (R. at 20.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease, chronic intractable headaches, residual effects of a cerebrovascular accident, and an anxiety disorder. (R. at 20.) At

---

[4] "Substantial gainful activity" is work that is both substantial and gainful as defined by the agency in the C.F.R. "Substantial work activity" is work activity that involves doing significant physical or mental activities. Work may be substantial even if it is done on a part-time basis or if the claimant does less, gets paid less, or has less responsibility than when the claimant worked before. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work activity done for "pay or profit, whether or not a profit is realized." *Id*. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. *Id*. § 404.1572(c).

4

step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.)

Between steps three and four, the ALJ determined Plaintiff's residual functional capacity.[5] (R. at 23-29.) The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following exceptions:

> [He] is limited to standing and walking no more than four hours in an eight-hour workday and sitting for 45-minute increments at any one time. He can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. He can no more than occasionally stoop, kneel, crouch, crawl, or balance. He should never be exposed to high, exposed places or moving mechanical parts and he requires a workplace with no more than a moderate noise intensity level as defined in the [DOT]. He should be allowed to wear either dark sunglasses or transitional lenses while indoors and should never be exposed to flashing lights or a high light intensity work environment. He can understand, remember and carry our simple instructions and make simple work-related decisions. He can work at a consistent pace throughout the workday but not at a production rate pace where tasks must be performed quickly such as that found on an assembly line or conveyor belt.

(R. at 23.) The ALJ explained that he determined Plaintiff's residual functional capacity after considering the evidence in the record and finding that the objective medical findings did not support Plaintiff's claimed levels of severity. (R. at 23-24.) Based on this determination, the ALJ

---

[5] "Residual functional capacity" is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p, 1996 WL 374184 (July 2, 1996). When assessing residual functional capacity, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

found at step four that Plaintiff's limitations prevented him from performing any of his past relevant work.[6] (R. at 29.)

At step five, the ALJ considered whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 30-31.) The ALJ weighed the testimony of the VE, who opined that Plaintiff could perform the requirements of occupations such as a classifier, router, and non-postal mail clerk. (R. at 30.) Given Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 31.) Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 31.)

## IV. ANALYSIS

Plaintiff challenges the ALJ's finding of "not disabled" by arguing that the ALJ erred by not resolving the conflict between the DOT jobs cited by the VE and the ALJ's hypothetical. (Pl.'s Mem. 10-12.) Plaintiff further contends the ALJ erred by determining Plaintiff's diplopia was not a medically determinable impairment. (Pl.'s Mem. 13-15.) Defendant responds that there was no conflict between the VE's testimony and the DOT. (Def.'s Mem. at 10-13.) Defendant also asserts the ALJ did not err in his evaluation of Plaintiff's diplopia. (Def.'s Mem. at 13-18.) For the reasons set forth below, the Court finds that the ALJ did not commit an error requiring remand.

**A. There Is No Conflict Between the VE's Testimony, DOT Positions Cited, And the ALJ's Residual Functional Capacity Determination for the Level Two Reasoning Positions.**

Plaintiff argues the ALJ erred as there are conflicts with the DOT jobs cited by the VE and the ALJ's residual functional capacity determination. (Pl.'s Mem. at 10.) Specifically, Plaintiff

---

[6] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

6

asserts that as the ALJ's residual functional capacity limits him to "understanding, remembering, and carrying out no more than 'simple instructions'" this creates a conflict with the DOT positions given by the VE. (Pl.'s Mem. at 12-13.) Defendant argues there is no conflict between the VE's testimony and the DOT, as Plaintiff's ability to understand, remember, and carry out simple instructions is compatible with reasoning level two jobs. (Def.'s Mem. at 10-13.)

The ALJ determined Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with some exceptions and:

> *He can understand, remember and carry out simple instructions and make simple work-related decisions.* He can work at a consistent pace throughout the workday but not at a production rate pace where tasks must be performed quickly such as that found on an assembly line or conveyor belt.

(R. at 23.) (emphasis added.) At step five, the ALJ determined that Plaintiff could perform positions such as: "(1) Classifier, DOT 361.687-017, light, SVP 2, with approximately 60,000 jobs in the national economy; (2) Router, DOT 222.587-038, light SVP 2, with approximately 50,000 jobs in the national economy; (3) Non-postal Mail Clerk, DOT 209.687-026, light, SVP 2, with approximately 40,000 jobs in the national economy." (R. at 30.)

At step five of the sequential analysis, the burden shifts to the Commissioner, and the ALJ must determine whether the claimant can perform work that exists in the national economy considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). To meet this burden, the ALJ may rely on the DOT, and may elicit testimony from a VE to "address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Id*. If the VE's testimony conflicts with the DOT, the ALJ must "inquire, on the record,

7

. . . whether the VE's testimony conflicts with the [DOT], and . . . elicit a reasonable explanation for and resolve conflicts between the expert's testimony and the DOT." *Id*. at 207-08 (citing SSR 00-4P, 2000 SSR LEXIS 8, 2000 WL 1898704 (Dec. 4, 2000)) (internal quotations omitted). The ALJ has an affirmative and independent duty to identify and resolve apparent conflicts between the VE's testimony and the DOT. *Id*. (noting that the VE's affirmative response when asked if her testimony conflicts with the DOT is not enough to fulfill the ALJ's duty). If the ALJ resolves the conflict by determining the VE's explanation is reasonable, and further explains why the VE's explanation is reasonable, then the ALJ can rely on the VE's testimony to support an ALJ's disability determination. *Id*.

Here, Plaintiff alleges a conflict in the ALJ's residual functional capacity determination and the reasoning levels of the DOT positions the VE set forth and the ALJ adopted. (Pl.'s Mem. at 11-12.) Specifically, Plaintiff notes that the residual functional capacity determination, which limited him to "simple instructions," creates a conflict with both reasoning level two and three positions. (Pl.'s Mem. at 11-12.) However, when applying *Lawrence v. Saul*, 941 F.3d 140 (4th Cir. 2019), district courts in the Fourth Circuit have found residual functional capacity determinations limited to simple instructions compatible with reasoning level two jobs. *See Dunivant v. Saul*, No. 1:19-cv-923, 2021 WL 620711, at *4 (M.D.N.C. Feb. 17, 2021) (holding "there is no conflict between [r]easoning [l]evel 2 and Plaintiff's ability 'to understand and remember simple instructions, make simple work-related decisions, and carry out simple instructions'"); *Gurley v. Saul*, No. 2:19-cv-869, 2020 WL 6218459, at *6-7 (D.S.C. June 24, 2020) (holding "[b]ecause Plaintiff was limited to 'simple,' rather than 'short,' instructions, there is no apparent unresolved conflict between the ALJ's [residual functional capacity] recommendation and the [reasoning level two] jobs identified by the vocational expert"), *report*

*and recommendation adopted*, 2020 WL 5640531 (D.S.C. Sept. 21, 2020); *Turner v. Saul*, No. 5:19-cv-190, 2020 WL 3866669, at *9-10 (E.D.N.C. June 9, 2020) (finding "a hypothetical question limiting one to simple, oral instructions, simple, routine tasks, and simple, work-related decisions, is materially different from similarly restricting her to short tasks, instructions, or decisions" and "simple instructions, tasks, or decisions do not create an apparent conflict" with reasoning level two jobs), *memorandum and recommendation adopted*, 2020 WL 3840510 (E.D.N.C. July 8, 2020); *Aquino-Hernandez v. Saul*, No. 9:19-cv-582, 2020 WL 4678823, at *5 (D.S.C. Mar. 11, 2020) (holding "there is no apparent conflict between [the claimant's residual functional capacity] for simple instructions, and the [r]easoning [l]evel 2 job"), *report and recommendation adopted*, 2020 WL 2487554 (D.S.C. May 14, 2020). As noted in *Lawrence*, level two reasoning states the individual will need to carry out detailed but uninvolved written or oral instructions. *Lawrence*, 941 F.3d at 143 (citing DOT, App. C, 1991 WL 688702). However, there is no conflict between "simple" and "uninvolved" instructions, as both require instructions that "are not complicated or intricate." *Id.* Therefore, as Plaintiff was limited to simple instructions, there is no conflict with the reasoning level two positions.

Additionally, Defendant essentially argues that the ALJ's adoption of a reasoning level three position would constitute harmless error. Defendant focused her argument on the reasoning level two as work exists in the national economy when there is a significant number of jobs, in one or more occupations. (Def.'s Mem. at 11 n.4.)

When confronted with an error committed by the ALJ, the Court must determine whether to apply the harmless error doctrine. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) (analyzing whether the ALJ's error in the credibility assessment constituted only harmless error); *Sharp v. Colvin*, 660 F. App'x 251, 252 (4th Cir. 2016) (deeming the ALJ's errors harmless). The

burden of establishing a harmful error rests on "the party attacking the agency's determination." *Shineski v. Sanders*, 556 U.S. 396, 409 (2009). In determining the significance of an error, courts must consider, among other factors, "an estimation of the likelihood that the result would have been different." *Id*. at 411. Further, "where the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency 'can decide whether reconsideration is necessary.'" *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011).

Against this standard, the Court concludes that the ALJ's failure to address the conflict regarding the level three reasoning position was harmless, as there was no conflict between the reasoning level two positions and Plaintiff's residual functional capacity, and those positions total 110,000 jobs in the national economy.

### B. The ALJ Properly Evaluated Plaintiff's Diplopia in Accordance with the Regulations.

Plaintiff argues the ALJ erred by improperly finding his diplopia to not be a medically determinable impairment. (Pl.'s Mem. at 13-15.) Defendant asserts that the ALJ did not err in his evaluation of Plaintiff's diplopia, as the record did not corroborate Plaintiff's alleged impairments. (Def.'s Mem. at 13-18.)

At step two, the ALJ is required to consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. §416.920(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 404.908. Further, the impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [Plaintiff's]

statement of symptoms." *Id.* Additionally, an impairment must "have lasted or must be expected to last for a continuous period of at least 12 months." 20 CFR § 404.1509.

Plaintiff argues that his diplopia (double vision) was not weighed or considered by the ALJ to be a medically determinable impairment. (Pl.'s Mem. at 13.) Plaintiff asserts that this failure to determine diplopia to be a medically determinable impairment would result in an improper residual functional capacity determination by the ALJ. (Pl.'s Mem. at 13-15.) To support his assertion that diplopia was a medically determinable impairment, Plaintiff asserts that his neurologist diagnosed him with diplopia on December 6, 2019 and noted it in three following exams. (Pl.'s Mem. at 14, citing R. at 430, 434, 437-38, 440-41.)

In response, Defendant argues that "Plaintiff bears the burden of proving he has a medically determinable impairment that satisfies the 12-month durational requirement, and that is so severe that it prevents him from engaging in any substantial gainful activity existing in the national economy." (Def.'s Mem. at 13 citing 42 U.S.C. § 423(d)(1)(A), (d)(2)(A), *Gross v. Heckler*, 785 F.2d 1163,1165 (4th Cir. 1986). Defendant also asserts that the ALJ addressed Plaintiff's reported diplopia at a later stage so, even if the ALJ did err, the error would be harmless. (Def.'s Mem. at 14 citing 26-28.)

It is the claimant's burden to demonstrate the existence of a medically determinable impairment through medical evidence. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("The Secretary . . . has express statutory authority to place the burden of showing a medically determinable impairment on the claimant."); *see also* 20 C.F.R. § 404.1508 (providing that

claimant must establish existence of medically determinable impairment from "medically acceptable clinical and laboratory diagnostic techniques").

Here, the ALJ made the implicit conclusion that Plaintiff's diplopia was not medically determinable. (R. at 20-21.) Further, the ALJ's opinion reflects that he did assess Plaintiff's symptoms and reported impact of diplopia when crafting the residual functional capacity determination. The ALJ discussed Plaintiff's testimony that he had problems with his vision, including double vision. (R. at 24.) However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the evidence within the record. (R. at 25.) The ALJ noted examinations of Plaintiff's eyes are "without nystagmus or any striking diplopic ocular misalignment in his eyes, and his vision is routinely equal with normal visual fields." (R. at 26, 27.)

The ALJ's determination that Plaintiff's diplopia was not a medically determinable impairment is supported by substantial evidence. On December 6, 2019, Plaintiff first complained of blurry vision to Joseph K. Harris, M.D. ("Dr. Harris"). (R. at 417-18.) Dr. Harris found Plaintiff's eyes were "normal for pupillary reactivity. Movement d/o without nystagmus or any striking diplopic ocular malalignment." (R. at 418.) Further, Dr. Harris found that Plaintiff's vision was equal with normal visual fields but confirmed that Plaintiff has diplopia.[7] (R. at 418.) Dr. Harris made the same notes on March 2, 2020 and June 23, 2020. (R. at 437, 434.)[8]

Prior to Plaintiff's appointment with Dr. Harris on December 6, 2019, the record does not

---

[7] Diplopia is the perception of two images of a single object; also called double vision. Diplopia, *Medical Dictionary for the Health Professions and Nursing* (2012) (retrieved August 11, 2022).

[8] Plaintiff asserts that his neurologist diagnosed him with diplopia on December 6, 2019, and noted it in three following exams. (Pl.'s Mem. at 14, citing R. at 430, 434, 437-38, 440-41.) However, the December 6, 2019 appointment was counted twice. (*Compare* 417-19, and 439-41.)

contain medical evidence that Plaintiff had diplopia. For example, on April 28, 2018, Plaintiff denied blurred vision and diplopia. (R. at 244, 338.) On June 15, 2019, Plaintiff denied any vision change. (R. at 239.) At his appointments with Dr. Harris on July 23, 2019 and September 4, 2019, Plaintiff did not report blurry vision. (R. at 401-03, 398-400.) Further, on July 25, 2019, Plaintiff reported his vision problems were corrected by eyeglasses or contacts. (R. at 474.) The ALJ properly declined to consider Plaintiff's diplopia as a medically determinable impairment since Plaintiff had not met his burden. Plaintiff's records do not show his diplopia lasted or was expected to last "for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

A review of the record confirms that Plaintiff's diplopia does not satisfy the 12-month durational requirement to qualify as a medically determinable impairment. Therefore, the ALJ did not err in his assessment of Plaintiff's diplopia. Additionally, the ALJ did not err when determining Plaintiff's residual functional capacity as he evaluated Plaintiff's asserted diplopia in accordance with the regulations when making his determination.

## V. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 23), GRANTS Defendant's Motion for Summary Judgment (ECF No. 25), and AFFIRMS the final decision of the Commissioner.

Let the clerk forward a copy of this Memorandum Opinion to all counsel of record.

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: September 27, 2022